**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MUNICIPAL REVENUE SERVICES, INC.** | : | **CIVIL ACTION** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| | : | |
| **JOHN P. MCBLAIN, Individually and in** | : | |
| **his official capacity as Vice President of** | : | **NO.  06-4749** |
| **Aldan Borough, and ALDAN BOROUGH** | : | |
| | : | |
| **Defendants.** | : | |
| | : | |

DuBOIS, J.                                                        August 1, 2008

## MEMORANDUM

### I.     INTRODUCTION

Plaintiff Municipal Revenue Services, Inc. ("MRS" or "plaintiff") filed suit against defendants John P. McBlain and Aldan Borough.  The case arises out of allegedly defamatory comments made by defendant McBlain both before and during a public meeting of the William Penn School Board ("WPSB") on October 24, 2005.

Plaintiff asserts federal claims under 42 U.S.C. § 1983 alleging that defendants violated MRS' rights under the First Amendment and Equal Protection Clause in Counts I, II and III of the Complaint.  Plaintiff also asserts a state law commercial disparagement claim in Count IV of the Complaint.

Presently before the Court is Defendants' Motion for Summary Judgment.  For the reasons that follow, the Court grants defendants' motion as to plaintiff's federal claims and enters judgment in favor of defendants on those claims.  The Court dismisses plaintiff's state law commercial disparagement claim without prejudice.

II.     **BACKGROUND**

Plaintiff is in the business of arranging for the purchase of delinquent tax liens by third parties.  (Defs.' Mot. 5; Pl.'s Resp. 2.)  At all times material to the case, defendant McBlain was an elected member and Vice President of the Aldan Borough Council and solicitor for Delaware County.  (Defs.' Mot. 7-8; Pl.'s Resp. 5.)  Defendant McBlain was also active in Republican Party politics.  (Defs.' Mot. 8; Pl.'s Resp. 5.)

In or about 2004 and 2005, the WPSB evaluated proposals for tax lien sales to generate additional revenue for the William Penn School District ("District").  The evaluation process came about for two reasons.

First, Joseph Otto, WPSB Chief Operations Officer and Board Secretary, had heard citizens complain for several years at WPSB meetings that local tax rates were high, in part, because of delinquent taxpayers in the School District.  (Otto Dep. 8/6/07, Ex. 12 to Pl.'s Resp. at 33-34.)  Mr. Otto began researching the names of companies assisting with delinquent tax collection after hearing from companies marketing that service and learning of changes in the law concerning tax collection.  (Id. at 33-35.)  In early 2005, Mr. Otto also attended a gathering of Delaware County business managers at which Xspand, one of MRS' competitors, made a presentation about its services.  (Id. at 34-36.)

Second, at approximately the same time that Mr. Otto was researching companies that assist with delinquent tax collection, WPSB Member Diane Leahan learned about MRS and its services from Raymond Santarelli, esq., an attorney at Elliott Greanleaf & Siedzikowski, P.C. ("E.G.S.").  (Defs.' Mot. 6; Pl.'s Resp. 2.)  Ms. Leahan arranged a meeting at which MRS and attorneys for E.G.S. met privately with WPSB members and WPSB Solicitor Frank Catania to explain MRS' services.  (Defs.' Mot. 6; Pl.'s Resp. 2.)

2

Mr. Santarelli was an active participant in Democratic Party politics (Defs.' Br. 6; Pl.'s Resp. 9) and Ms. Leahan met him through her contacts working with the Democratic Committee in Delaware County (Leahan Dep. 8/6/07, Ex. 8 to Pl.'s Resp. at 14-15).  On September 21, 2005, Mr. Santarelli filed an amicus brief on behalf of the Delaware County Democratic Party in a case before the Pennsylvania Supreme Court addressing whether Charlotte Hummel, a Democratic candidate for re-election to the WPSB, should have her name placed on the ballot. (Hummel Dep. 8/22/07, Ex. 4.)  In that case, defendant McBlain served as counsel for the Delaware County Board of Elections, which opposed issuance of a court order granting Ms. Hummel relief.  (Pl.'s Resp. 9; McBlain Dep. 8/20/07, Ex. 10 to Pl.'s Resp. at 101-02.)  On October 14, 2005, the Pennsylvania Supreme Court decided in favor of Mr. Santarelli's position – and against defendant McBlain's – and remanded the case to the trial court with instructions that resulted in Ms. Hummel's name being placed on the ballot.  (Hummel Dep., Ex. 5.)

On July 14, 2005, three companies were invited to give public presentations to the WPSB promoting their delinquent tax collection services: MRS, Xspand and the Portnoff law firm ("Portnoff").  (Defs.' Mot. 7; Pl.'s Resp. 2.)  Soon after the July 2005 presentations, Portnoff was eliminated from consideration because unlike MRS and Xspand, it would only assist with tax collection for future years and would not collect taxes that were already delinquent.  (Defs.' Mot. 7; Pl.'s Resp. 2.)  MRS and Xspand remained as viable candidates for purchasing the WPSB's tax liens.

On October 13, 2005, Mr. Otto sent a Memorandum to all WPSB members titled "Options of Programs for Collection of Delinquent Taxes."  (Otto Dep. 8/06/07, Ex. 3.)  In the Memorandum, Mr. Otto stated that MRS' approach to collecting delinquent revenues was "much

simpler" than Xspand's and less disruptive to the District's existing tax collection practices.  (<u>Id.</u> at 2.)  Accordingly, Mr. Otto recommended that the WPSB sell its tax liens to MRS.  (<u>Id.</u>) Subsequent to Mr. Otto circulating the Memorandum, a resolution was placed on the agenda of the WPSB Business Hearing scheduled for October 24, 2005, authorizing District administrators to take additional steps toward selling the District's tax liens to MRS.  (Otto Dep., Ex. 4.)

Aldan Borough, the jurisdiction for which defendant McBlain served as an elected official, was one of six municipalities within the WPSB's jurisdiction.  (Otto Dep., Ex. 12 to Pl.'s Resp. at 14.)  Accordingly, defendant McBlain attended WPSB meetings, particularly when they involved the District's finances.[1]  (Defs.' Mot. 8; Pl.'s Resp. 16, 20.)

Prior to the October 24, 2005 Business Hearing, defendant McBlain learned of the proposed sale of the District's tax liens to MRS.  (Defs.' Mot. 7-8; Pl.'s Resp. 10.)  Defendant McBlain attended the October 24, 2005 meeting and the public pre-session during which agenda items for the meeting were discussed.  (Defs.' Mot. 8-9; Pl.'s Resp. 10-11.)  Defendant McBlain spoke out against the proposed tax lien sale to MRS at the pre-session and meeting.  (Defs.' Mot. 10; Pl.'s Resp. 10.)  He stated the following at the meeting:[2]

> Thank you, Mr. President.  And good evening members of the board. I want to speak to you about Item E-4, which is a proposed resolution to move forward to sell certain tax liens.  I ask you to vote against this proposed resolution tonight.  This is nothing more than loan sharking with attorneys fees.  That's all it is.

---

[1] The parties dispute precisely how frequently defendant McBlain attended WPSB meetings prior to October 24, 2005.  They agree, however, that he attended at least three WPSB meetings in 2005.  (Defs.' Mot. 8; Pl.'s Resp. 16, 20.)

[2] Defendant McBlain's comments were recorded at the time of the Business Hearing and subsequently transcribed.

No one here can tell you what percentages you will be paying. When I attended the meeting downstairs, the pre-meeting, I was shocked to learn that the proposal which has been sent to the solicitor has a note for 7.8 million dollars. Based on the information that was provided by this company, itself, there is only 6.1 million dollars of outstanding liens for all of the years including principal, interest and penalties.

And this doesn't even include any payment that you would have received in October for the month of September which would have included the upset price sale, which I've heard was a large amount, but I didn't hear what the amount was, but I would imagine that that number has come down significantly since then.

Before moving forward I would also ask the board to tell us what are the attorneys fees, how many attorneys will be represented in the William Penn School District and what attorneys will be getting paid as a result of this and who are those attorneys.

And, as I understand it, the solicitor had what he announces today was the closing package which he had received from this company already. So that should be listed in the closing package. So he should be able to read off to us tonight what the proposed attorneys fees are. And if you don't know what the attorneys fees are you shouldn't vote on this. If you don't have that type of information you shouldn't go forward with this. You should tell the public who the principals of the various companies are that are involved in this.

I would ask that you let the public review the written proposal from this company before taking any action. And I realize I heard the discussions downstairs that this is sort of like dipping our toes in, and it's just a move forward. But it's not, this is like getting engaged after the first date. People don't do that. You should decline to take any action or vote down this resolution tonight until you can figure out exactly what it is that you're getting, exactly what interest you'd be paying and exactly what fees they are.

And, Mr. President, I'd ask that you authorize and tell us tonight what are the various fees that are applicable and who's being paid what in this proposed transaction.

I received a call on Friday from this company in my capacity as Solicitor of the County telling me that there was an agreement with the William Penn School District and asking me to produce a certification from the tax claim bureau as to the amount of outstanding taxes.

To my knowledge, there has been no vote on this, yet they're calling around and proposing and have a closing package all ready for you and they're telling me that there's an agreement in place.

5

What are the various fees that are involved?  What exactly do you have to pay back?
If your note is for 7.8 million dollars that's the amount you have to pay back.  Where
are you going to get that money to pay back and what type of a hole does that leave
in your budget for next year?

As I understand it, they're only looking to give you four years worth of delinquent
taxes.  Well, that's the low hanging fruit.  You are going to get that as soon as people
get their first notice from the tax claim bureau that they're delinquent.

You shouldn't go forward with this.  They're taking ten percent off the top and only
giving you 90 percent and then taking an additional five percent in fees.  In my
calculation that's at least 15, 16 percent where you are right off the top.  You know,
once you get into that, the money after that, now you're talking loan sharking money,
loan sharking with attorneys fees is all this is.

(McKelligott Dep. 8/17/07, Ex. 11 to Pl.'s Resp. at 39-44.)

After defendant McBlain offered his remarks and board members heard from other

members of the community, the WPSB voted on the resolution, which passed by a vote of seven

to one.[3]  (WPSB Bus. Hr'g Mins. for 10/24/05, Ex. Z to Defs.' Mot.)  Nonetheless, the District's

discussions with MRS stalled and no agreement was ever reached between the WPSB and MRS

or any of its competitors.  (Defs.' Mot. 12; Pl.'s Resp. 13.)

## III.   PROCEDURAL HISTORY

Plaintiff filed its Complaint on October 23, 2006.  In Counts I through III of the

Complaint, plaintiff asserted various claims under 42 U.S.C. § 1983 against defendants McBlain

and Aldan Borough.  Specifically, in each of those Counts, plaintiff asserted procedural due

process violations, substantive due process violations, arbitrary treatment and discrimination in

violation of the Equal Protection Clause, and First Amendment retaliation.  In Count IV, plaintiff

asserted a claim for commercial disparagement against defendant McBlain.

---

[3] The ninth member of the WPSB, Dorothy Reed, was absent from the October 24, 2005
meeting because of a medical condition.  (Reed Dep. 8/10/07, Ex. W to Defs.' Mot at 16-18.)

On November 20, 2006, defendants filed a Motion to Dismiss.  By Memorandum and Order dated March 19, 2007, the Court granted in part and denied in part defendants' motion. The Court dismissed plaintiff's procedural and substantive due process claims with prejudice. The Court also dismissed plaintiff's claims for punitive damages against defendant McBlain in his official capacity, but not in his individual capacity.  The Court denied defendants' motion to dismiss plaintiff's First Amendment, equal protection and commercial disparagement claims.

On October 15, 2007, defendants filed the instant Motion for Summary Judgment as to all of plaintiff's remaining claims.

## IV.    STANDARD OF REVIEW

### A.    Summary Judgment Standard

A court should grant summary judgment if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A factual dispute is material when it "might affect the outcome of the suit under the governing law."  Id.  In considering a motion for summary judgment, the "facts must be viewed in the light most favorable to the party opposing summary judgment."  Int'l Raw Materials, Ltd. v. Stauffer Chem. Co., 898 F.2d 946, 949 (3d Cir. 1990).  The party opposing the motion, however, cannot "rely merely upon bare assertions, conclusory allegations, or suspicions" to support its claim.  Fireman's Ins. Co. v. DuFresne, 676 F.2d 965, 969 (3d Cir. 1982).

7

### B.    Qualified Immunity

Defendant McBlain claims that he is entitled to qualified immunity.  The principles

governing claims of qualified immunity are well-established.  "Under the doctrine of qualified

immunity, 'government officials performing discretionary functions generally are shielded from

liability for civil damages insofar as their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known.'"  Beers-Capitol v.

Whetzel, 256 F.3d 120, 142 n.15 (3d Cir. 2001) (quoting Harlow v. Fitzgerald, 457 U.S. 800,

818 (1982)).

"A court evaluating a claim of qualified immunity 'must first determine whether the

plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to

determine whether that right was clearly established at the time of the alleged violation.'"

Wilson v. Layne, 526 U.S. 603, 609 (1999) (quoting Conn v. Gabbert, 526 U.S. 286, 290

(1999)); see also Saucier v. Katz, 533 U.S. 194, 201-02 (2001) (further explicating two-step

inquiry); Curley v. Klem, 499 F.3d 199, 206-07 (3d Cir. 2007).[4]

### C.    42 U.S.C. § 1983

In Counts I through III of the Complaint, plaintiff seeks damages under 42 U.S.C. § 1983.

Section § 1983 provides, in relevant part, "[e]very person who, under color of any statute,

ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be

subjected, any citizen of the United States or other person within the jurisdiction thereof to the

deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be

---

[4] Because the Court concludes that plaintiff has not introduced sufficient evidence to
establish the deprivation of a constitutional right, it does not reach the second step of the
qualified immunity analysis in ruling on either of plaintiff's constitutional claims.

liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

To establish a claim under § 1983, a plaintiff must show that "the defendant, acting under color of state law, deprived him or her of a right secured by the Constitution or the laws of the United States." Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006).

## V.     DISCUSSION

### A.     Plaintiff's Federal Claims

#### 1.     Equal Protection Claim

Defendants argue that they are entitled to summary judgment on plaintiff's equal protection claim because of plaintiff's failure to present evidence that defendant McBlain treated MRS differently than its competitors.  (Defs.' Mot. 31.)  In response, plaintiff asserts that "[d]efendant McBlain vindictively and deliberately used his position under color of state law to strike out against Plaintiff MRS through an arbitrary campaign of harassment and defamation designed to deprive it of business with WPSB."  (Pl.'s Resp. 58.)  The Court agrees with defendants on this issue.

As explained in the Court's Memorandum dated March 19, 2007, plaintiff asserts a "class of one" equal protection claim under Village of Willowbrook v. Olech, 528 U.S. 562 (2000) (per curiam).  To state a claim under this theory, plaintiff must establish that "(1) the defendant treated [MRS] differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment."  Hill v. Bor. of Kutztown, 455 F.3d 225, 239 (3d Cir. 2006).  Persons are similarly situated under the Equal Protection Clause only when they are alike "'in all relevant aspects.'"  Startzell v. City of Philadelphia, --- F.3d ---, 2008 WL 2736293, *15 (3d Cir. 2008) (quoting Nordlinger v. Hahn, 505 U.S. 1, 10 (1992)).

9

Three companies made presentations to the WPSB: MRS, Xspand and Portnoff.  To prevail on its equal protection claim, plaintiff must establish that defendants treated MRS differently than the other two companies vying for the District's business.  Plaintiff has failed to present such evidence.  To the contrary, there is uncontradicted evidence in the record that defendant McBlain generally opposed tax lien sales.  See (Cartisano Dep. 5/27/07, Ex. II to Defs.' Mot. at 159) ("Mr. McBlain was not in favor of selling tax liens and he did not feel [that a proposed sale of the county's tax liens to Xspand] would benefit the county."); (Reilly Dep. 5/29/07, Ex. KK to Defs.' Mot. at 30) (stating that defendant McBlain "had a general unfavorable impression of these [tax lien] transactions for government entities").

Plaintiff points to the fact that defendant McBlain only spoke out against MRS as evidence that he favored its competitors.  However, the Xspand and Portnoff proposals never advanced far enough in the evaluation process to come before the WPSB for a vote.  Thus, the fact that defendant McBlain only criticized MRS' proposal, without more, is not evidence of differential treatment for purposes of establishing an equal protection claim.

Plaintiff also points to defendant McBlain's participation in a transaction between Xspand and the City of Chester and Chester Upland School District (collectively "Chester") as evidence that defendant McBlain favored Xspand.  (Pl.'s Resp. 58-60.)  In 2005, Chester, which is located in Delaware County, but outside of Aldan Borough, entered into a delinquent tax collection agreement with Xspand.  As part of that transaction, Chester was required to enter into a Servicing Agreement with Delaware County to facilitate cooperation with the Tax Claim Bureau.  (McClain Dep. 9/27/06, Ex. 9 to Pl.'s Resp. at 203.)  As solicitor for Delaware County, defendant McBlain was asked to review documents for the transaction and to assist with

preparation of the Servicing Agreement.  Defendant McBlain performed this function without

voicing opposition to the agreement between Chester and Xspand.  (Pl.'s Resp. 21-22.)

Plaintiff's reliance on the Chester transaction as evidence of unequal treatment is

misplaced for two reasons.  First, there is no evidence that defendant McBlain personally

supported the Chester/Xspand agreement, or that he took any action, beyond what was required

of him as solicitor of Delaware County, to advance the transaction.  To the contrary, when

Chester proposed to Delaware County that the County also sell its liens to Xspand, defendant

McBlain expressed disapproval of such a sale.[5]  (Cartisano Dep., Ex. II to Defs.' Resp. at 159.)

Second, defendant McBlain was neither the elected representative nor attorney for any

party with a stake in the success of the Chester/Xspand agreement.  In contrast, the WPSB

resolution directly impacted defendant McBlain's constituents on a budgetary matter of concern

to him as elected official.  Accordingly, defendant McBlain's treatment of Xspand in the Chester

transaction cannot be compared to his treatment of MRS' proposal to the WPSB because the

transactions were not similar in "all relevant respects."[6]

---

[5] Xspand's effort to sell its tax liens to Delaware County gained no traction and the County never took action on the proposal.  (McBlain Dep. 9/27/06, Ex. 9 to Pl.'s Resp. at 202-03; Cartisano Dep., Ex. II to Defs.' Mot. at 151-52.)

[6] The Court also notes that even when viewing the record in the light most favorable to plaintiff, plaintiff's response misrepresents the level of defendant McBlain's participation in the Chester transaction.  For example, plaintiff states that "Defendant McBlain was directly involved in the closing of the [Chester/Xspand] transaction."  (Pl.'s Resp. 7.)  In fact, defendant McBlain stated that he had no involvement in the closing of the Chester transaction and that his role in the transaction had concluded earlier with completion of the Servicing Agreement.  (McClain Dep. 9/27/06, Ex. 9 to Pl.'s Resp. at 262-63.)  Plaintiff also asserts that defendant McBlain criticized the attorneys' fees provisions in the MRS proposal while approving of more generous attorneys' fees in the Chester agreement.  (Pl.'s Resp. 7-8.)  However, defendant McBlain stated repeatedly during his deposition that he was unaware of who was receiving attorneys' fees or the scope of the attorneys' fees involved in the Chester/Xspand agreement.  (McClain Dep. 9/27/06, Ex. 9 to Pl.'s Resp. at 243-44, 248-49, 263-64, 266-67.)  Plaintiff produced no evidence to the contrary.

Even if defendant McBlain's differential treatment of the of the two agreements could satisfy the first element of an equal protection claim, plaintiff would not be entitled to relief because there was a rational basis for that difference in treatment.  An elected official would rationally be more concerned and outspoken about a proposal involving his constituents than a transaction in another community.  Thus, evidence of defendant McBlain's participation in the Chester/Xspand transaction is not sufficient to establish the elements of a "class of one" equal protection claim.

For the foregoing reasons, the Court concludes that plaintiff has failed to present sufficient evidence to raise a genuine issue of material fact as to whether defendant McBlain violated the Equal Protection Clause.  Thus, the Court grants defendants' motion with respect to plaintiff's equal protection claim.

### 2.      First Amendment Claim

Plaintiff alleges that defendants violated MRS' First Amendment rights by retaliating against MRS for its engagement in constitutionally protected activity.

Plaintiff's First Amendment retaliation claim is analyzed under a three-part test. "Plaintiff must prove (1) that he engaged in constitutionally-protected activity; (2) that the government responded with retaliation; and (3) that the protected activity caused the retaliation." Eichenlaub v. Twp. of Indiana, 385 F.3d 274, 282 (3d Cir. 2004) (citing Anderson v. Davila, 125 F.3d 148, 161 (3d Cir. 1997); Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001)).

Defendants argue that plaintiff's First Amendment claim fails because MRS cannot establish any of the three elements of a First Amendment retaliation claim.  (Defs.' Mot. 35-38.) In response, plaintiff contends that defendant "McBlain violated its First Amendment rights by

attacking Plaintiff to benefit himself and more politically favored businesses, who are also competitors of MRS.  He also did it in retaliation for his defeat to reconfigure the WPSB just five (5) days before the October 24, 2005 WPSB meeting."[7]  (Pl.'s Resp. 60-61.)  The Court finds in favor of defendants on this issue.

Plaintiff alleges that defendant McBlain acted "to make room for politically favored businesses" or "desire[d] to retaliate for the Plaintiff or Plaintiff's associates own political activities."  (Pl.'s Mot. 61.)   Plaintiff cites numerous cases in support of its position that defendant McBlain's conduct constituted "political discrimination."  Significantly, all but two of the cases plaintiff cites involve public employees suing their employers for retaliation in the employment context.  See, e.g., Galli v. New Jersey Meadowlands Comm'n, 490 F.3d 265 (3d Cir. 2007) (apolitical government employee fired for failing to support administration or political party in power); Martinez-Sanes v. Turnbull, 318 F.3d 483 (3d Cir. 2003) (public employees fired for political beliefs); Stephens v. Kerrigan, 122 F.3d 171 (3d Cir. 1997) (police officers denied promotion for failure to support mayor's candidacy); Bennis v. Gable, 823 F.2d 723 (3d Cir. 1987) (police officers demoted for allegedly retaliatory reasons); Christy v. Pennsylvania Tpk. Comm'n, 904 F. Supp. 427 (E.D. Pa. 1995) (state agency employee alleging political bias). The only two cases plaintiff cites not involving public employees were brought by independent contractors with pre-existing relationships with local governments.  O'Hare Truck Serv., Inc. v. City of Northlake, 518 U.S. 712, 725-26 (1996) (towing service removed from city's rotation list for failing to contribute to mayor's reelection campaign); Schlier v. Rice, No. 3:04-CV-1863,

_____

[7] Plaintiff's argument refers to the litigation concerning Ms. Hummel's campaign for re-election to the WPSB described in Section II of this Memorandum.

2007 WL 2990868, *5 (M.D. Pa. Oct. 9, 2007) (towing service cutoff from police department business in retaliation for complaint about unpaid bills).  These cases are inapposite to the instant dispute as plaintiff is neither a public employee nor a contractor with a pre-existing relationship to the District.

In McClintock v. Eichelberger, the Third Circuit addressed the question of whether an independent contractor who possesses no prior relationship to a governmental entity may assert a First Amendment retaliation claim for political discrimination resulting in denial of a contract. 169 F.3d 812, 816-17 (3d Cir. 1999).  The Supreme Court had expressly left that question open in Board of County Commissioners v. Umbehr, a case in which the Court held that independent contractors who have a pre-existing relationship with a municipality may not have that relationship terminated in retaliation for the exercise of the freedom of speech.  518 U.S. 668, 685 (1996).  The Court stated in Umbehr: "[W]e emphasize the limited nature of our decision today.  Because Umbehr's suit concerns the termination of a pre-existing commercial relationship with the government, we need not address the possibility of suits by bidders or applicants for new government contracts who cannot rely on such a relationship."  Id. Addressing this open question, the McClintock court held that the constitutional protection afforded by Umbehr to independent contractors with pre-existing relationships to a government does not extend to new applicants for contracts.  169 F.3d at 817; see also Allstate Transp. Co., Inc. v. Se. Pennsylvania Transp. Auth., No. 97-1482, 2000 WL 329015, *20 (E.D. Pa. Mar. 27, 2000) (holding independent contractor without prior relationship to government could not assert First Amendment retaliation claim for failure to award contract); Halstead v. Motorcycle Safety Found., Inc., 71 F. Supp. 2d 464, 473-74 (E.D. Pa. 1999) (same).  While at least one circuit has

14

disagreed with <u>McClintock</u>'s holding, <u>see</u> <u>Oscar Renda Contracting, Inc. v. City of Lubbock</u>, 463 F.3d 378, 383-86 (5th Cir. 2006), <u>McClintock</u> remains the law in the Third Circuit and binding on this Court.

Applying <u>McClintock</u> to the case at bar, the Court concludes that plaintiff's First Amendment claim fails as a matter of law.  Plaintiff argues that defendant McBlain stymied its effort to contract with the WPSB for impermissible political reasons.  However, plaintiff does not aver that it had a pre-existing business relationship with the WPSB.[8]  Accordingly, even assuming that defendant McBlain was motivated by political considerations and that his actions were the reason the tax lien sale was aborted – both issues disputed by the parties – MRS' claim would fail.  Thus, the Court grants defendants' motion as to plaintiff's First Amendment claim.

### 3.    Plaintiff's Claims Against Aldan Borough

In Counts One through Three of the Complaint, plaintiff also asserts claims against Aldan Borough.  For plaintiff to establish the Borough's liability under § 1983, it must satisfy the requirements set forth by the Supreme Court in <u>Monell v. Department of Social Services of the City of N.Y.</u>, 436 U.S. 658, 690 (1978).

To establish <u>Monell</u> liability, a plaintiff must "identify a municipal 'policy' or 'custom' that caused the plaintiff's injury."  <u>Bd. of County Comm'rs of Bryan County v. Brown</u>, 520 U.S. 397, 403 (1997); <u>see also</u> <u>City of Canton v. Harris</u>, 489 U.S. 378, 385 (1989); <u>Berg v. County of</u>

---

[8] The Court notes that unlike in most political discrimination cases, plaintiff does not assert a claim against the governmental entity that failed to award it a contract (the WPSB), but rather, it asserts a claim against an outside elected official (defendant McBlain) and the municipality he represents (Aldan Borough).  Nonetheless, the Court construes plaintiff's claim against defendants as it would a claim against the WPSB because MRS argues that defendant McBlain wielded such influence over the WPSB that his criticizing MRS effectively dictated the WPSB's actions.

Allegheny, 219 F.3d 261, 275 (3d Cir. 2000).  A municipal "policy" may arise from the "decisions of [a municipality's] duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality."  Bd. of County Comm'rs of Bryan County, 520 U.S. at 403-404.  A municipal "custom" is a practice that has not been formally approved, but is "so widespread as to have the force of law."  Id. at 404.

A plaintiff may identify a municipal policy by reference to individual conduct in the following three situations: "(1) the individual acted pursuant to a formal government policy or a standard operating procedure long accepted within the government entity, (2) the individual himself has final policy-making authority such that his conduct represents official policy, or (3) a final policy-maker renders the individual's conduct official for liability purposes by having delegated to him authority to act or speak for the government, or by ratifying the conduct or speech after it has occurred."  Hill v. Borough of Kutztown, 455 F.3d 225, 245 (3d Cir. 2006).

To satisfy the causation requirement of Monell, a plaintiff must demonstrate that a municipality was the "moving force" behind the alleged injury. "  Bd. of County Comm'rs of Bryan County, 520 U.S. at 404.  "That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights."  Id.

Plaintiff argues that Aldan Borough is liable under § 1983 because defendant McBlain acted "as the official representative and 'liaison' of Aldan Borough" when attending the WPSB meeting on October 24, 2005, and because Aldan Borough maintained a policy or custom that permitted its employees to violate plaintiff's rights.  (Pl.'s Resp. 64, 69.)  The Court has concluded that there is no genuine issue of material fact as to whether defendant McBlain is

liable for violating plaintiff's constitutional rights.  For the same reason that plaintiff's claims against defendant McBlain fail, the Court rejects plaintiff's claims against Aldan Borough.  If defendant McBlain did not engage in actionable wrongdoing, then no reasonable juror could find that his conduct reflected a broader Borough custom, or that because of his high-level position, his wrongdoing can be attributed to the Borough.  Thus, the Court grants defendants' motion as to plaintiff's claims against Aldan Borough.

### B.  State Law Commercial Disparagement Claim

Having granted summary judgment on plaintiff's remaining federal claims, the Court has disposed of the counts of the Complaint which provided the Court with original jurisdiction in this case.  The only claim remaining for adjudication is plaintiff's state law commercial disparagement claim, over which the Court had supplemental jurisdiction pursuant to 28 U.S.C. 1367.[9]  That statute permits a district court to decline to exercise supplemental jurisdiction over any remaining state law claim if "the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  A grant of summary judgment acts as a dismissal for purposes of § 1367(c)(3).  See Tully v. Mott Supermarkets, Inc., 540 F.2d 187, 196 (3d Cir. 1976) ("If it appears that the federal claim is subject to dismissal under F.R. Civ. P. 12(b)(6) or could be disposed of on a motion for summary judgment under F.R. Civ. P. 56, then the court

---

[9] 28 U.S.C. 1367(a) provides, in relevant part:

Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

17

should ordinarily refrain from exercising jurisdiction in the absence of extraordinary circumstances."); Mark v. Bor. of Hatboro, 856 F. Supp. 966, 976 (E.D. Pa. 1994) (concluding that "[b]ecause summary judgment is being granted to each defendant as to the only federal claim, this Court may decline to exercise jurisdiction over the pendant state claims.").

The Third Circuit has held that "the rule within this Circuit is that once all claims with an independent basis of federal jurisdiction have been dismissed the case no longer belongs in federal court." Markowitz v. Ne. Land Co., 906 F.2d 100, 106 (3d Cir. 1990). Thus, "where the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." Boneburger v. Plymouth Twp., 132 F.3d 20, 23 n.1 (3d Cir. 1997) (quoting Bor. of West Mifflin v. Lancaster, 45 F.3d 780, 788 (3d Cir. 1995)). Plaintiff's commercial disparagement claim, which turns on whether plaintiff's reference to MRS' proposal as "loan sharking with attorneys fees" is actionable, presents an issue that Pennsylvania courts are well-equipped to address. So too does defendant McBlain's argument that he is entitled to "high public official immunity" under Pennsylvania law.[10] Further, because the issues raised by plaintiff's commercial disparagement claim are distinct from those raised by its federal claims, and because the

---

[10] While defendant McBlain also argues that he is entitled to immunity under the federal Noerr-Pennington doctrine, which provides immunity from liability for conduct resulting from petitioning a governmental body, the state courts are competent to address that defense. See, e.g., Wawa, Inc. v. Alexander J. Litwornia & Assocs., 817 A.2d 543, 546-47 (Pa. Super. Ct. 2003) (applying Noerr-Pennington doctrine in suit alleging commercial disparagement and other state law claims); Firetree, Ltd. v. Fairchild, 920 A.2d 913, 918-19 (Pa. Commw. Ct. 2007) (applying Noerr-Pennington doctrine in suit for breach of contract and tortious interference with contractual relations).

discovery conducted to date can be used in a state court proceeding, consideration of judicial economy does not warrant retention of jurisdiction over that claim. Similarly, there are no issues of convenience or fairness warranting adjudication of plaintiff's state law claim in this Court. In sum, the Court finds no "extraordinary circumstances," Tully, 540 F.2d at 196, providing an "affirmative justification," Boneburger, 132 F.3d at 23 n.1, for retaining jurisdiction over plaintiff's state law claim. Accordingly, the Court dismisses plaintiff's commercial disparagement claim without prejudice to plaintiff's right to assert that claim in state court.

## VI.   CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is granted in part. The Court grants defendants' motion as to plaintiff's Equal Protection Clause and First Amendment claims and denies the motion in all other respects. Judgment is entered in favor of defendants and against plaintiff on those claims. The Court dismisses plaintiff's commercial disparagement claim without prejudice.

An appropriate order follows.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MUNICIPAL REVENUE SERVICES, INC.** | : | **CIVIL ACTION** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| | : | |
| **JOHN P. MCBLAIN, Individually and in** | : | |
| **his official capacity as Vice President of** | : | **NO.  06-4749** |
| **Aldan Borough, and ALDAN BOROUGH** | : | |
| | : | |
| **Defendants.** | : | |
| | : | |

## ORDER

   **AND NOW** this 1st day of August, 2008, upon consideration of Defendants' Motion for Summary Judgment (Document No. 47, filed October 15, 2007); Plaintiff's Response to Defendants' Motion for Summary Judgment (Document No. 49, filed November 1, 2007); Defendants' Reply to Plaintiff's Response to Motion for Summary Judgment (Document No. 57, filed November 21, 2007); and Plaintiff's Surreply Brief in Support of its Response to Defendants' Motion for Summary Judgment (Document No. 58, filed November 29, 2007), **IT IS ORDERED** that Defendants' Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**, as follows:

   1.  Defendants' Motion for Summary Judgment is **GRANTED** as to plaintiff's Equal Protection Clause and First Amendment claims asserted in Counts I, II and III of the Complaint, and **DENIED** in all other respects;

2.  **JUDGMENT IS ENTERED** in **FAVOR** of defendants John P. McBlain and Aldan Borough and **AGAINST** plaintiff Municipal Revenue Services with respect to plaintiff's Equal Protection Clause and First Amendment claims asserted in Counts I, II and III of the Complaint;

3.  Plaintiff's state law commercial disparagement claim asserted in Count IV of the Complaint is **DISMISSED WITHOUT PREJUDICE**.

**BY THE COURT:**

**/s/    JAN E. DUBOIS, J.**
**JAN E. DUBOIS, J.**
